# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| **MEDSENSE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No.: GLS-18-3262** |
| | ) | |
| **UNIVERSITY SYSTEM OF MARYLAND,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

MedSense, LLC ("MedSense" or "Plaintiff") brings this action against Defendants University System of Maryland, University of Maryland, College Park, Miao Yu, and Hyung Dae Bae (collectively, the "Defendants"). (ECF No. 25). In essence, Plaintiff alleges that: (a) the University System of Maryland ("USM") and University of Maryland, College Park ("UMD") breached an exclusive licensing agreement related to certain intellectual property ("IP") by failing to disclose authored publications to MedSense; and (b) Defendants Yu and Bae, the authors of those publications, disclosed trade secrets and confidential information. (*Id.*).

Pending before this Court is Defendants' "Motion to Dismiss Plaintiff's First Amended Complaint or, in the Alternative, for Summary Judgment," which Plaintiff opposes. The issues have been fully briefed. ECF Nos. 29, 30 and 32, and this Court finds that no hearing is necessary. *See* Local Rule (L.R.) 105.6. For the reasons set forth more fully below, Defendant's motion is **GRANTED**.

# I. FACTUAL BACKGROUND[1]

MedSense is a limited liability corporation organized under the laws of the State of Delaware, with a principal place of business in Irvine, California. (ECF No. 25, ¶ 3). The company engages in the design and manufacture of miniature fiber optic pressure and temperature sensors and sensor-based systems, as well as those related to medical or industrial application. (*Id*.). USM is body corporate and politic composed of constituent organizations. (*Id*., ¶ 4). UMD is a higher learning institution and constituent organization of USM. (*Id*., ¶ 5). Miao Yu, Ph.D., is a Maryland resident and UMD professor of mechanical engineering and research scientist. (*Id*., ¶ 6). Hyung Dae Bae, Ph.D., is a Maryland resident and former UMD professor of mechanical engineering and research scientist. (*Id*., ¶ 7). Dr. Bae currently is a professor at Howard University. (*Id*.).

On or about March 15, 2010, MedSense and UMD entered into an "Exclusive Licensing Agreement" ("2010 Licensing Agreement"). (ECF No. 25, ¶ 15). The 2010 Licensing Agreement granted Plaintiff a worldwide, exclusive right and license for certain IP, and patent rights to make and sell certain products, services, and processes concerning PS-2009-085 "Surface Mountable Ultra-Miniature Fiber Optic Pressure Sensor" ("PS-2009-085"). (*Id*. ¶¶ 15, 20). The sensor technology had been developed by Defendants Yu and Bae, who MedSense had engaged to further assist with working on a "proof of concept" or prototype. (*Id*., ¶¶ 25-26).

In or about April 2012, MedSense and UMD agreed to amend the 2010 Licensing Agreement. In addition, in May and July 2012, the 2010 Licensing Agreement was further amended, providing Plaintiff with exclusive license to inventions IS-2012-047 "Optical Interrogation Program for Fiber-Optic Pressure Sensors Based on LabVIEW ("IS-2012-047") and

---

[1] Unless otherwise noted, the facts are taken from the Amended Complaint, ECF No. 25, and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes the facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

PS-2012-061 "Smart Multifunctional Optical System-on-a-Chip Sensor Platform and Optical Wireless Sensor Network Node" ("PS-2012-061"). (*Id*. ¶¶ 19-20). The remaining terms of the 2010 Licensing Agreement remained the same.

In or about July 2013, the parties entered into an amended and superseding Exclusive Licensing Agreement ("2013 Licensing Agreement"), whereby Plaintiff agreed to provide an increased royalty payment to UMD and to provide equity stakes in MedSense to UMD, Yu, and Bae, as well as other individuals, in exchange for their existing and future work in developing the licensed technology. (*Id*., ¶ 31). The 2013 Licensing Agreement continued to govern the patent and licensing rights related to PS-2009-085, IS-2012-047, and PS-2012-061, as well as PS-2015-080. (ECF No. 25, ¶¶ 19, 75).

### *TEDCO Phase I & III Grants*

In or about August 2013 the Maryland Technology Economic Development Corporation ("TEDCO") awarded MedSense a $100,000 grant to facilitate the development of a working proof of concept related to the licensed IP. (*Id.*, ¶ 34). According to Plaintiff, Defendant Yu led the efforts of the Phase I Grant and was involved in sensor design, modeling, and management of the project (*Id.*). Defendant Bae oversaw sensor development, fabrication and evaluation. (*Id.*). Thereafter, in or around March 13, 2014, Plaintiff was granted an additional $100,000 through a TEDCO Phase III Grant, which was used to fund a batch fabrication process of first generation optic sensors, a project led by Defendants Yu and Bae. (*Id.,* ¶ 42).

### *MIPS Grant*

On or about August 1, 2014, Plaintiff and UMD entered into Maryland Industrial Partnership Agreement No. 5430 ("MIPS Agreement") to facilitate additional funding toward further developing the licensed technology. (*Id.*, ¶ 36). As a partner, Plaintiff contributed $10,000

in cash to UMD and an additional $35,000 as an "in-kind contribution."[2] (*Id.*).  Contained within the MIPS Agreement was a clause permitting UMD to publish papers or make public presentations regarding the underlying project, but subject to providing MedSense with a copy of such publication or presentation 30-days prior to the date of submission for MedSense's review of any company-owned confidential information. (ECF No. 25, ¶ 38). In addition, the MIPS Agreement contained a section that told each party that it had a duty to prevent the disclosure to third parties of confidential information belonging to the other party, and also told each party to not use confidential information for any other purpose not contemplated by the project and without consent of the other party. (*Id.*).

### *Publications*

Beginning in or about June 2012 until about June 2016, Defendants Yu and Bae published a series of articles allegedly relating to their work during the time that they were involved with MedSense.  In a June 2012 article in Optics Express, Vol. 20, No. 13 entitled "Hybrid Miniature Fabry-Perot Pressure Sensor Created Using UV-molding Process with Optical Fiber based Mold," Defendants Yu and Bae described the polymer fiber optic sensor and design manufacturing process. (*Id.*, ¶ 44).  On or about September 23, 2013, Defendants Yu and Bae, as well as another individual, published an article in Optics Express, Vol. 21, No. 19, entitled "MEMS Fabry-Perot Sensor Interrogated by Optical System-on-a-Chip for Simultaneous Pressure and Temperature Sensing," which purportedly described optical system-on-a-chip interrogator for pressure and temperature sensing. (*Id.*, ¶ 48).

---

[2] Although a partnership, the MIPS Agreement instructed that any intellectual property developed solely by one party would belong to that party while any intellectually property jointly developed would be jointly owned. (ECF No. 25, ¶ 39).

In or around April 2014, Defendants Yu and Bae published an article in the Journal of Lightwave Technology entitled "Hybrid Miniature Fabry-Perot Sensor with Dual Optical Cavities for Simultaneous Pressure and Temperature [M]easurements," which purportedly described the drawback of an all polymer miniature fiber optic pressure sensor. (*Id.*, ¶ 45). Thereafter, in 2015, Defendants Yu and Bae published an article in Optics Express entitled "On-Fiber Plasmonic Interferometer for Multi-Parameter-Sensing." (*Id.*, ¶ 54).

In or about June 27, 2016, Defendants Yu and Bae published an article in Optics Express, Vol. 24, No. 17, entitled "Low cost, high performance white-light fiber-optic hydroponic system with a trackable working point," with co-authors employed by Tianjin University. (*Id.*, ¶ 57). This article described how Fabry-Perot hydrophones suffer from working point drift and the method to correct the issue. (*Id.*).

## II. PROCEDURAL BACKGROUND

On October 22, 2018, MedSense filed this case in this Court. (ECF No. 1). On January 4, 2019, MedSense filed an Amended Complaint, first asserting that Defendant UMD allowed Defendants Yu and Bae to publish five articles that disclosed MedSense's trade secrets without its permission, and in violation of its exclusive rights to the IP under the terms of the 2013 Licensing Agreement. (ECF No. 25, Count 1, breach of contract). Second, according to MedSense, Defendants' actions deprived it of its right to protect from China its trade secrets and its interests in the exclusively licensed IP through publications. (*Id.*, Counts 6 & 7, misappropriation of federal and state trade secret laws). Third, MedSense avers that the Defendants made misrepresentations regarding the viability of the IP and what they would do to promote it, in order to induce MedSense into the 2010 & 2013 Licensing Agreements, the MIPS Agreement, the TAPS Licensing Agreement, among others. (*Id.*, Counts 2 – 4, state tort claims). Fourth, MedSense alleges that

Defendants' actions unjustly enriched them. (*Id*., Count 8, unjust enrichment). MedSense further contends that Defendants Yu and Bae tortuously interfered with the 2013 Licensing Agreement. (*Id*., Count 9, tortious interference with contract). Finally, Plaintiff requests a declaratory judgment against all Defendants pursuant to 28 U.S.C. §§ 2201 *et seq*. (*Id*., Count 5). Count 1 is solely against USM and UMD, whereas Count 9 is solely against Defendants Yu and Bae in their official and individual capacities. (*Id*.). Counts 2-8 are against all Defendants. (*Id*.).

## III.     STANDARDS OF REVIEW

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may allege that sovereign immunity serves to be a jurisdictional bar against the claim. *Cunningham v. Gen. Dynamics Info. Tech., Inc.,* 888 F.3d 640, 649 (4th Cir. 2018). When a defendant challenges subject matter jurisdiction, plaintiff bears the burden of establishing that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*. 166 F.3d 642, 647 (4th Cir. 1999).

A Rule 12(b)(1) challenge to subject matter jurisdiction may proceed "in one of two ways": (1) by mounting either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction; or (2) a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted)(alteration in original). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual challenge, however, a "district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id*. Under this scenario, a district court may regard the pleadings as

mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

If a district court finds that subject matter jurisdiction is lacking, then the complaint must be dismissed. *Cunningham*, 888 F.3d at 649.

### B. Motion to Dismiss for Failure to State a Claim

When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it is asserting that, even if you construe the facts advanced in the Plaintiff's complaint as true, that complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, then, a complaint must contain sufficient facts, and must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must set forth enough facts as to suggest a "cognizable cause of action"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The purpose of Rule 12(b)(6) "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D.Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

In general, when a motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), a court cannot consider documents outside of the pleadings to resolve factual disputes. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may consider documents "attached or incorporated into the complaint," as well as documents attached to a motion to dismiss, "so long

as they are integral to the complaint," *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), "and if the plaintiffs do not challenge its authenticity." *Pasternak & Fidis P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F.Supp.3d 886, 894 (D.Md. 2015).

### C. Converting a Motion to Dismiss to a Summary Judgment Motion

When a motion is captioned as a motion to dismiss, or alternatively, as a motion for summary judgment, it implicates the Court's discretion under Fed. R. Civ. 12(d) to consider facts outside of the pleadings, including affidavits, declarations or deposition transcripts. *See Kelly v. Lease*, No. RDB-16-3294, 2017 WL 2377795, at *1 (D.Md. May 31, 2017). Depending on how a court considers matters outside of the pleadings, a motion to dismiss may be treated as one for summary judgment, and all parties must be given a reasonable opportunity to present evidence.

Put another way, under Rule 12(d), a court has "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it, or simply not consider it.'" *Sager v. Hous. Comm'n,* 855 F.Supp. 2d 524, 542 (D.Md. 2012) (quoting 5C Charles Alan Wright et al., *Federal Practice & Procedure* §1366, at 159 (3d ed. 2004, 2011 Supp.)).  In general, a district court is guided by whether considering the extraneous material is "likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure is necessary." *Id.*

## IV. Discussion

Defendants advance several arguments in support of dismissing the Amended Complaint. (ECF 29-1).  First, that all claims against USM and UMD are barred by the Eleventh Amendment to the United States Constitution. Second, that all state law claims against USM and UMD are also barred by the State sovereign immunity doctrine. Third, Defendants Yu and Bae argue that all

claims against them are barred by the Eleventh Amendment and the state sovereign immunity doctrine. Fourth, Defendants allege that all claims are barred pursuant to the January 2017 Mutual Release and Covenant Not to Sue. Fifth, all state law claims against all Defendants are precluded because the statute of limitations for filing suit has expired. Sixth, that Counts 2-4 should be dismissed because they lack the requisite particularity of pleading required by Fed. R. Civ. P. 9(b). Finally, as to Counts 6 & 7, Defendants contend those claims should be dismissed because MedSense fails to state claims upon which relief can be granted. (*Id.*). The Court will first proceed on the jurisdictional issue of whether Eleventh Amendment immunity protects USM and/or UMD from suit in this Court.

## A. Immunity – USM and UMD

### 1. Eleventh Amendment Immunity

Defendants USM and UMD contend that they are immune from suit in federal court under the Eleventh Amendment. Thus, this Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (ECF No. 29-1, pp. 7-8).

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. CONST., amend. XI. The Supreme Court has interpreted the Eleventh Amendment to stand for the proposition that the "Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). In other words, the Eleventh Amendment bars individuals and corporations from bringing suit against a state in federal court to recover damages,

unless an exception to sovereign immunity applies. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011); *Seminole Tribe*, 517 U.S. at 54-55.

Sovereign immunity also bars suit against an instrumentality of the state, an "arm of the state," absent an explicit waiver or congressional abrogation of sovereign immunity. *Seminole Tribe,* 517 U.S. at 54-55.  This immunity extends to "state agencies and state officers acting in their official capacities." *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996).

Here, in establishing USM, the Maryland legislature specifically defined it as an "instrumentality of the State," governing "constituent institutions" of higher education. Md. Code Ann., Educ. §§ 12-104, 12-101(b)(6).  UMD is listed as one of those "constituent institutions" of higher education. Md. Code Ann. Educ. § 12-101(b)(6)(i); *see also Brownscombe v. Dep't of Campus Parking*, 203 F.Supp.2d 479, 483 (D.Md. 2002)(recognizing the University System of Maryland and University of Maryland as the "same legal entity," based on state law).[3] *See also Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 265 (4th Cir. 2005) (recognizing USM as an "alter ego of Maryland."); *Palotai v. Univ.of Maryland College Park*, 959 F.Supp. 714, 716 (D. Md. 1997) ("The University of Maryland is . . . 'an arm of the State partaking of the State's Eleventh Amendment immunity.'" (quoting *Bickley v. Univ. of Maryland*, 527 F.Supp. 174, 181 (D.Md. 1981)).  Here, as State entities, Defendants USM and UMD are entitled to sovereign immunity under the Eleventh Amendment.

Plaintiff does not disagree that the Eleventh Amendment provides immunity to USM or UMD from suit in federal court.  Rather, Plaintiff avers that USM and UMD have waived immunity

---

[3] Utilizing the point that USM and UMD are recognized as the same legal entity, Defendants request that this Court dismiss USM from this action because Plaintiff's claims are against UMD rather than USM. (ECF No. 29-1, p. 8).  As set forth more fully below, because this Court finds that Eleventh Amendment immunity exists to bar suit against USM and UMD, dismissal of this case is warranted.  However, this Court need not address whether the claims against USM should be dismissed without prejudice.

by assenting to be sued through Section 13.08 of the 2013 Licensing Agreement. (ECF No. 30-1, pp. 11-19).

The Fourth Circuit has noted that there are three exceptions to the Eleventh Amendment's bar of suits against a state or its arm: abrogation, prospective injunctive relief against state officials acting in violation of federal law[4], and waiver by the state or its arm. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012); *see also Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *Lapides v. Bd. of Regents of Univ. Sys. Of Georgia*, 535 U.S. 613, 618 (2002). In the instant case, only two of the noted three exceptions potentially apply: abrogation and waiver.

### A. Abrogation

MedSense raises a claim under a federal statute, the Defense of Trade Secrets Act ("DTSA"). Thus, the Court's inquiry first begins with whether Congress' enactment of the DTSA abrogates Maryland's Eleventh Amendment immunity.

Congress can abrogate a state's Eleventh Amendment immunity pursuant to a valid grant of constitutional authority. *Garrett*, 531 U.S. at 363. To determine whether Congress has, in fact, abrogated a state's sovereign immunity, "we ask two questions: first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,'. . . and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe of Florida,* 517 U.S. at 55 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

---

[4] This exception is known as the *Ex parte Young* doctrine, which "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). *Ex parte Young* doctrine is viewed as a "narrow one" and is only applicable where a party seeks prospective relief. *Id.* This doctrine, however, "does not permit judgments against state officers declaring that they violated state law in the past" nor, as here, does it have "application in suits against the States and their agencies." *Id.* Accordingly, the Defendants are correct that the *Ex Parte Young* doctrine is not applicable in the instant case.

In 2016, Congress passed the DTSA, providing that "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *See* P.L. 114-153 (May 11, 2016). In enacting the law, Congress provided some limitation to the applicability of the law by expressing that the DTSA "does not prohibit or create a private right of action" with regard to "any otherwise lawful activity conducted by a governmental entity . . . of a State." 18 U.S.C. § 1833(a)(1). Congress granted the United States district courts original jurisdiction over civil actions arising under the statute. *See* 18 U.S.C. § 1836(c).

To date, there do not appear to be any reported cases from this Circuit that address the application of the DTSA to a state or its instrumentalities, nor does there appear to be any reported cases dispositive of the issue as to whether Congress has abrogated a State's Eleventh Amendment immunity through enactment of the DTSA. Defendants rely on *Fast Enterprises, LLC v. Pollack*, for support of their proposition that Congress did not abrogate States' Eleventh Amendment immunity. Civ.A. No. 16-cv-12149-ADB, 2018 WL 4539685, at *4 (D.Mass. Sept. 21, 2018). However, *Fast Enterprises* is distinguishable from the facts presented in instant case. Specifically, the district court had to determine whether the CEO/Secretary of the Massachusetts Department of Transportation's misappropriated confidential information in violation of the DTSA by releasing information contained in a bid proposal that was subject to a public information request. *Id*. at *1. Competing against the DTSA was Massachusetts' public records statute requiring the disclosure of those bid proposal documents upon request. *Id*. The district court found that, because the CEO/Secretary was complying with Massachusetts law, even if it conflicted with DTSA, the court could not otherwise find that CEO/Secretary engaged in "unlawful activity." *Id*. at *4.

Here, as alleged, Defendants' actions of releasing confidential information through publication of researched matters is factually dissimilar. Nevertheless, a review of the DTSA does not indicate that it was Congress' intent to abrogate a state's Eleventh Amendment immunity by permitting a private party to bring forth a civil suit in federal court. Although Section 1836(c) provides original jurisdiction to a district court, the statute is silent as to which parties can be sued in federal court. Because the Supreme Court instructs that "Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement," the authorization of a civil action in a federal court cannot be read to mean that this language alone constitutes "statutory language sufficient to abrogate the Eleventh Amendment" by permitting suit against a State or its entities. *Seminole Tribe of Florida*, 517 U.S. at 55-56 (internal quotations omitted). Accordingly, this Court agrees with Defendants that the DTSA does not abrogate the State's Eleventh Amendment immunity afforded to USM and UMD.[5]

### B. Waiver

A state, or its instrumentality, may waive its Eleventh Amendment sovereign immunity and be sued in federal court. *Lapides*, 535 U.S. at 618; *Lee-Thomas*, 666 F.3d at 249. However, the "test for determining whether a [s]tate has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded by statute,* P.L. 99-506, *as recognized in Lane v. Pena*, 518 U.S. 187 (1996). A court may find that a state has waived its Eleventh Amendment immunity in one of two ways: (1) a state makes a "'clear distinction' that it intends to submit itself to [federal] jurisdiction"; or (2) a state voluntarily

---

[5] Defendants also aver that Plaintiff's DTSA claim fails because the law was enacted following the alleged misappropriations of trade secrets prior to 2016. (ECF No. 29-1, pp. 27-28). Because the Court finds that Congress did not intend to abrogate a state's Eleventh Amendment immunity, and Plaintiff's claim against USM and UMD cannot stand in this Court, this Court need not further address Defendants' substantive argument that Plaintiff's claims pre-date the enactment of the DTSA.

invokes federal jurisdiction. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999) (quoting *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)); *see also, Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)(explaining a state's consent to suit must be "unequivocally expressed.").

    1. <u>Express Waiver</u>

"[A] state's highest court is entitled to say what that state's law is on the question of consent to suit in a federal court." *Lee-Thomas*, 666 F.3d at 252 (citing *Palmer v. Ohio*, 248 U.S. 32, 34 (1918)). Maryland's highest court, the Court of Appeals, has instructed that "any waiver of [the State's] immunity must come from the [l]egislature." *State v. Sharafeldin*, 382 Md. 129, 140, 854 A.2d 1208, 1214 (Md. 2004). Under this construct, "[s]tate agencies may not, on their own, waive sovereign immunity 'either affirmatively or by failure to plead it.'" *Id.* Regarding an express waiver, i.e., consent, the Supreme Court has stated that this is present "only where stated by the most express language of by such overwhelming implication from the text [that will] leave no room for any other reasonable construction." *Atascadero State Hosp.*, 473 U.S. at 240 (internal quotation marks and alteration omitted).

The Court of Appeals has explained that the Maryland legislature's waiver of State sovereign immunity related to claims arising out of contracts entered into by the State or its employees, does not waive "'the State's Eleventh Amendment immunity in actions in federal court or [] waive its inherent sovereign immunity in actions filed in the courts of some other State.'" *Sharafeldin,* 854 A.2d at 1219 (quoting *Dept' of Natural Res. v. Welsh*, 308 Md. 54, 59-60, 521 A.2d 313, 315-16 (Md. 1986)). Accordingly, a district court will "strictly construe" waiver arguments in favor of the sovereign. *Sossamon v. Texas,* 563 U.S. 277, 285 (2011).

In opposing Defendants' Motion to Dismiss, Plaintiff avers that the language contained in the 2013 Licensing Agreement waived USM and UMD's right to assert a sovereign immunity defense. (ECF No. 30-1, p. 11). Defendants contend, however, that the "express contract language provides that only one party, the LICENSEE (MedSense), consent[ed] to jurisdiction [of] this federal court." (ECF No. 29-1, 13). The issue is whether the language contained within the parties' 2013 Licensing Agreement acts as an express waiver, and therefore, USM and UMD acquiesced to federal court jurisdiction.[6] Section 13.08 of the 2013 Licensing Agreement states:

> This Agreement and the inventorship and ownership of any inventions, patents, products and other intellectual property rights relating to the subject matter(s) of this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Maryland and the United States of America. LICENSEE consents to the exclusive jurisdiction and venue of the United States District Court for the District of Maryland or, if federal jurisdiction is lacking, the Circuit Court of the State of Maryland. LICENSEE further agrees to waive its right to assert that either forum lacks personal jurisdiction over LICENSEE or is an inconvenient forum for resolving the underlying dispute. (J.R. 027).

In this instance, the Court finds that UMD and USM, constituent entities of the State of Maryland, have not expressly waived the State's Eleventh Amendment immunity. A plain reading of the 2013 Licensing Agreement demonstrates that "LICENSEE" only refers to MedSense. Section 13.08 clearly states that it is the Licensee who is the party consenting to this Court's jurisdiction. *See* J.R. 027, "2013 Exclusive License Agreement." The language within Section 13.08 does not expressly state that, as "LICENSOR," e.g., USM or UMD, acquiesces to federal

---

[6] Although Defendants challenge the Amended Complaint on Eleventh Amendment immunity grounds, the disputed issue before this Court is whether USM and/or UMD waived this immunity privilege in the 2013 Licensing Agreement. Where, as here, the parties are disputing facts associated with subject matter jurisdiction, a district court is permitted to consider the pleadings as evidence and "may consider outside evidence" to assist in its determination. *Hyde v. Maryland State Bd. Of Dental Exam.*, No. ELH-16-2489, 2017 WL 2908998, *4 (D.Md. July 7, 2017). As here, where the Plaintiff initially attached the 2013 Licensing Agreement to its Complaint, and the parties have also submitted a Joint Record ("J.R.") and, because the authenticity of this Agreement is not challenged by either party, the "court may properly consider documents that are 'explicitly incorporated into the complaint by reference to those attached to the complaint as exhibits[.]'" *Id.* at *4 (quoting *Goines v. Valley Cnty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2014)). Therefore, the Court will consider the 2013 Licensing Agreement for the limited purpose of deciding whether USM and/or UMD assented to federal jurisdiction.

jurisdiction.  Thus, this Court declines to construe Section 13.08 as containing an express waiver.

Because Plaintiff cannot direct this Court to any language in which USM or UMD provided a

"clear declaration" of a waiving the State's sovereign immunity, this Court cannot agree that USM

or UMD have unequivocally expressed their consent to being sued in this Court.  *See College Sav.*

*Bank*, 527 U.S. at 676 (noting waiver is absent even where a State merely states "its intention to

sue or be sued, . . . or even authorizing suits against it in any court of competent jurisdiction.")

(internal quotations omitted).

Finally, MedSense's reliance on three cases cited in its memorandum to support its

contention that USM and/or UMD waived its Eleventh Amendment immunity is misapplied.  In

each of those cases, those courts were able to conclude that those States had waived their Eleventh

Amendment immunity either through express language contained within contractual agreements,

*see Pettigrew v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety,* 722 F.3d 1209, 1215 (10th Cir.

2013) and *Baum Research & Dev. Co. v. Univ. of Massachusetts at Lowell*, 503 F.3d 1367, 1371

(Fed. Cir. 2007), or the state legislature(s) agreed to waive jurisdiction through statutory

provisions, *see Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 307-309 (1990).

Neither factual scenario is present in the instant case.  Therefore, the Court will next address

whether Defendants USM and UMD have waived immunity by voluntarily invoking jurisdiction.

2.  Voluntary Action/Affirmative Conduct

Defendants next contend that they are involuntary parties to the underlying action, and

therefore, have not engaged in affirmative conduct to subject them to federal jurisdiction and

waiver of their Eleventh Amendment immunity. (ECF No. 29-1, p. 10).   "[W]aiver by litigation .

. . 'involve[s] actions in which the state acted as an affirmative participant rather than as a

beleaguered defendant.'" *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F.Supp.2d 542, 553 (D.Md.

2008)(quoting *Unix Sys. Labs, Inc. v. Berkley Software Design, Inc.*, 832 F.Supp. 790, 801-02 (D.N.J. 1993)).

Here, Plaintiff has brought a claim against USM and UMD in federal court. It cannot argue that either USM or UMD acted as an affirmative participant that voluntarily invoked federal jurisdiction. Thus, this Court declines to find that USM and UMD waived the State of Maryland's immunity from suit. Indeed, the Supreme Court has held that a state entity named as a party in a pending federal court action is viewed as an involuntary participant. *See Lapides*, 535 U.S. at 622. Accordingly, it is insufficient to constitute as a waiver of the state's Eleventh Amendment immunity.

This Court, therefore, holds that based on the foregoing reasons, Defendants USM and UMD have not waived their Eleventh Amendment immunity either through express language or by affirmative conduct such that they are subject to federal court jurisdiction. Accordingly, because the Eleventh Amendment bars Plaintiff from bringing forth suit against USM and UMD, all of Plaintiff's claims, Counts 1-8, must be dismissed without prejudice against USM and UMD. *See Palotai*, 959 F.Supp. at 720.

### 2. State Statutory Immunity

Although this Court has ruled that Counts 1-8 against USM and UMD are to be dismissed, this Court will also take a moment to address whether the State statutory immunity defense raised by Defendants relating to Plaintiff's state law claims, Counts 1-4 and 7-8, leads to a similar result.

Pursuant to the Maryland Tort Claims Act ("MTCA"), the State's legislature has authorized the limited waiver of the State's sovereign immunity for it and its "units" as to tort claims brought forth "*in a court of the State.*" Md. Code Ann., State Gov't § 12-104(a) (emphasis added).

For claims originating from a contract, the legislature has instructed that, unless otherwise provided, the "State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, *in a court of the State*, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee." *Id*., State Gov't § 12-201(a). (emphasis added). The Court of Appeals defined the term "in a court *of* the State" to mean a "court that is part of the Maryland judiciary." *Sharafeldin*, 382 Md. at 149, 854 A.2d at 1219; *see Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 397 (4th Cir. 1990) (MTCA "limits the state's waiver of immunity to actions brought in Maryland state courts."). Although a state may waive its sovereign immunity by statute to subject the state or its agencies to suit in the state's own courts, this "'does not constitute a waiver by a state of its constitutional immunity under the Eleventh Amendment from suit in federal court.'" *Beckham*, 569 F.Supp.2d at 550-51 (quoting *Fla. Dep't Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (per curiam)).

Defendants assert that Plaintiff should have filed its state contract and tort law claims in a state court. (ECF No. 29-1, p. 15). This Court agrees. The law is clear that such claims should be brought in a state court and Plaintiff's state law claims against these state entities cannot survive in federal court. *See also, Palotai,* 959 F.Supp. at 719-20 (explaining dismissal due to Eleventh Amendment immunity precludes federal jurisdiction over pendent state law claims). Accordingly, Plaintiff's state contract and tort law claims must also be dismissed without prejudice.

**B. Claims against Drs. Yu and Bae**

**1. Eleventh Amendment Immunity as State Employees**

Defendants further contend that, because USM and UMD are entitled to Eleventh Amendment immunity, Drs. Yu and Bae, as employees of UMD, are also entitled to the same

immunity. (ECF No. 29-1, p. 19). Specifically, Defendants aver that their actions were within the scope of employment, which entitles them to Eleventh Amendment immunity. (*Id.*). Although MedSense does not disagree that Eleventh Amendment immunity is applicable to Defendants Yu and Bae, it argues that such immunity is waived because Defendants Yu and Bae "acted maliciously, without just cause, illegally, or recklessly . . . [for] publishing no less than five articles disclosing trade secrets." (ECF No. 30-1, p. 26). Plaintiff further contends that Defendants Yu and Bae acted in their "individual capacities" in publishing confidential evidence of MedSense and "failing to maintain . . . [a] confidential relationship between equity interest holders and MedSense." (*Id.*).

As it concerns the application of a state's Eleventh Amendment immunity to its employees, the Fourth Circuit has held that a "suit against the state official acting in their official capacities is a suit against the State." *Weller*, 901 F.2d at 397-98. However, those same "officials may be sued in their individual capacities." *Id.* at 397. Thus, dismissal of claims against state officials acting in their official capacities is proper. *Gray v. Laws*, 51 F.3d 426, 439 (4th Cir. 1995).

Plaintiff concedes in its memorandum that Defendants Yu and Bae were acting within their scope of employment. *See* ECF No. 30-1, p. 26. Because this Court has already found that Eleventh Amendment immunity bars MedSense's claims against Defendants USM and UMD, this Court also finds that such immunity is applicable to Defendants Yu and Bae for claims raised against them for claims against them in their official capacity as employees of UMD. Even construing MedSense's allegations within its Amended Complaint as true, there do not appear to be any reported cases from this Circuit standing for the proposition that if state employees acted maliciously or with gross negligence that this vitiates the applicability of the State's Eleventh

Amendment immunity. Therefore, MedSense's claims against Defendants Yu and Bae in their official capacity, Counts 2-9, must be dismissed without prejudice.

### 2. State Statutory Immunity for Employees

Similar to the immunity afforded state employees under the Eleventh Amendment is the immunity afforded by the State to its employees. Maryland provides that state employees are protected from liability by state sovereign immunity for tortious acts or omissions that are within the scope of their employment, unless those actions were made with malice or gross negligence. *See* Md. Code Ann., Cts. & Judic. Proc. § 5-522(b); State Gov't § 12-105. Where a plaintiff advances claims alleging malice, the complaint should contain "well-pled facts showing 'ill-will' or 'evil or wrongful motive'" to be "sufficient to take a claim outside of immunity and non-liability provisions of the MTCA." *Barbre v. Pope*, 402 Md. 157, 935 A.2d 699, 714 (Md. 2007). "Malice" is defined as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Id.* "Gross negligence" is defined as the "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them," and if said differently "a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.* at 717.

Defendants aver that Plaintiff's claims against Defendants Yu and Bae are also barred by state statutory immunity. (ECF No. 29-1, pp. 19- 21). Specifically, Defendants contend that the Amended Complaint is "devoid of any specific factual allegation that Drs. Yu and Bae were grossly negligent or acted with malice," such that their statutory immunity is vanquished. (*Id.*, p. 19). MedSense counters that, *inter alia*, Defendants Yu and Bae withheld MIPS deliverables and

published more than five articles that disclosed its trade secrets both of which demonstrate that Defendants Yu and Bae acted "maliciously, without just cause, illegally, or recklessly on multiple occasions." (ECF No. 30-1, p. 26). Moreover, MedSense asserts that, after receiving equity stakes in the company, Defendant's Yu and Bae each acted in their individual capacities by publishing confidential information belonging to MedSense and that Yu and Bae failed to maintain confidentiality. (*Id.*)

Here, in reviewing the allegations asserted in Plaintiff's Amended Complaint, the Court is unable to discern what actions Defendants Yu and Bae allegedly undertook that were outside the scope of their employment. For example, the articles published by Defendants Yu and Bae were during the time of their employment with UMD. However, Plaintiff's Amended Complaint alleges that those articles were published while they were engaged in working with MedSense and during Defendant's Yu's and Bae's employment with UMD.

Moreover, other than stating in its Amended Complaint that Defendants Yu and Bae acted willfully or maliciously, Plaintiff has not set forth any facts demonstrating that those publications were authored or published with malicious intent or motive sufficient to void Defendants' immunity. *See Barbre*, 935 A.2d at 717 (viewing gross negligence as "something more than simple negligence, and likely more akin to reckless conduct."). Accordingly, without more, this Court is unable to find that Defendants Yu or Bae acted outside the scope of their employment or that Defendants acted with malice or gross negligence in their official capacity to void statutory immunity.[7]

---

[7] It should be noted that the State of Maryland's immunity is not fully waived for tortious acts or omissions made by its employees, including those made with malice or gross negligence. *See Barbre*, 402 Md. 157, 935 A.2d at 710; Md. Code Ann., Cts. & Jud. Proc. § 5-522. Accordingly, any claim related to actions done by Defendants Yu or Bae with malice or gross negligence could not survive against USM or UMD.

Separately, because MedSense also raises the claims against Defendants Yu and Bae in their individual capacity, this Court cannot apply the same analysis and conclude that they are immune from suit in this capacity. *See Weller*, 901 F.2d at 398. However, as already articulated, from this Court's reading of Plaintiff's Amended Complaint, it cannot discern what actions Defendants Yu and Bae undertook outside the scope of their employment with UMD. Therefore, at this juncture, those claims against Defendants Yu and Bae in their individual capacities, Counts 2-9, will also be dismissed without prejudice subject to MedSense further amending its Complaint to articulate what actions Defendants Yu and Bae may have taken outside of the scope of their employment. Because this Court will dispense with Plaintiff's claims based on the aforementioned grounds, this Court need not address the merits of Defendants' substantive arguments on the remaining issues.

## V. Conclusion

For the foregoing reasons, Counts 1-8 against the University System of Maryland, the University of Maryland, College Park, and Drs. Yu and Bae, in their official capacities as employees of UMD, are **DISMISSED WITHOUT PREJUDICE**. Counts 2-9 against Defendants Yu and Bae, in their individual capacities, are also **DISMISSED WITHOUT PREJUDICE**.

Dated: September 27, 2019

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge