**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | |
|---|---|
| **MEDSENSE, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**UNIVERSITY SYSTEM OF MARYLAND,** )<br>**et al.,** )<br>)<br>**Defendants.** )<br>_____ ) | **Civil Case No.: GLS-18-3262** |

**MEMORANDUM OPINION**

Pending before this Court is a "Motion for Leave to file a Second Amended Complaint" filed by Plaintiff MedSense, LLC, ("MedSense" or "Plaintiff"), (ECF No. 38), which Defendants Miao Yu, and Hyung Dae Bae (collectively, the "Defendants") oppose. (ECF No. 39). The issues have been fully briefed, and this Court finds that no hearing is necessary. *See* Local Rule (L.R.) 105.6. For the reasons set forth more fully below, Plaintiff's motion is **DENIED**.

**I. BACKGROUND**

In a prior memorandum opinion, this Court detailed the procedural history of this case, including the fact that Plaintiff previously filed a complaint, and later received leave to file an Amended Complaint against Defendants Yu, Bae, and against then-defendants University System of Maryland ("USM") and University of Maryland-College Park ("UM"). (ECF No. 36). In that Amended Complaint, MedSense claimed that those defendants: (1) breached intellectual property agreements; (2) deliberately failed to disclose information to Plaintiff; (3) misrepresented their technological capabilities to induce Plaintiff to grant some equity interests in the IP; and (4) misappropriated trade secrets by publishing them in research papers. (ECF No. 25). The Amended

Complaint asserted nine causes of action related to breach of contract, several torts, violations of statutory trade secret acts, and also sought declaratory relief. Thereafter, all of those defendants filed a motion to dismiss. This Court granted the motion, holding that all were immune from suit under the Eleventh Amendment, and entitled to state statutory immunity under the Maryland Tort Claims Act ("MTCA"). (ECF No. 36). As is relevant here, the Court also found that the Amended Complaint did not plausibly allege that Defendants Yu and Bae, as state employees, were not entitled to broad immunity under the MTCA. Accordingly, the Court dismissed all claims against Defendants Bae and Yu without prejudice, allowing MedSense to amend its complaint for a second time to try to articulate a basis to hold Drs. Bae and Yu liable in their individual capacities. (*Id.* at 22). Put another way, if MedSense sought to hold Defendants liable, its Second Amended Complaint must plausibly allege that Dr. Bae and Dr. Yu acted outside of the scope of their employment or that they acted maliciously or with gross negligence.

As a preliminary matter, Plaintiff previously took the position that the acts of Drs. Bae and Yu were done outside of the scope of their public employment. (ECF No. 30-1, p. 26). For the most part, the language in Plaintiff's proposed Second Amended Complaint ("Proposed Complaint") mostly mirrors the language found in the First Amended Complaint. The Proposed Complaint details the nature of the relationship between UM and Plaintiff, and the Defendants' role, as evidenced in the License Agreement (2010), an amended License Agreement (2013), the TAP License Agreement, the TEDCO Phase I and Phase III grants, and the MIPS Partnership Agreement. (ECF No. 38-4, at ¶¶9-48, 66-74). Because the Court has previously set forth those allegations in detail in the September 2019 memorandum opinion, (*See* ECF No. 36, pp.1-4), it will not repeat them here. Nonetheless, the Court does analyze those allegations in tandem with the new allegations in the Proposed Complaint.

The Proposed Complaint asserts eight causes of action, which are torts and violations of statutory trade secret acts. The Proposed Complaint also seeks declaratory relief. In essence, the Proposed Complaint still alleges two theories of liability: (1) that Defendants Yu and Bae misrepresented their progress in developing technology to mass produce sensors in order to induce Plaintiff to grant them equity interests in Plaintiff's entity; and (2) the Defendants misappropriated trade secrets and confidential information of Plaintiff by publishing articles without Plaintiff's knowledge or consent. (ECF No. 38-4, ¶¶82-149).

**A. Scope of Employment**

Regarding, the scope of Dr. Bae's and Dr. Yu's employment, MedSense's Proposed Complaint now alleges that:

(a) "During his engagement with Plaintiff, Defendant Bae used his personal email address. . . as opposed to an email address associated with USM or UM." (ECF No. 38-4, at ¶50);

(b) "Defendant Yu had intermingled efforts from several funding sources with the confidential efforts of Plaintiff; (ECF No. 38-4, at ¶ 45);

(c) From January 1, 2015 to May 2016, Defendant Bae worked on a part-time basis as a research engineer to develop the same "proof of concept, prototype, and batch manufacturing process" as he was working on with Defendant Yu in connection with the UM agreements. Defendant Bae performed this part-time work while also working for UM. (ECF No. 38-4, at ¶¶ 49, 51);

(d) Defendant Yu played a role in determining the amount of Bae's part-time compensation, and in determining that Bae would equally divide his time between working for UM and working for Plaintiff. In July 2015, Plaintiff discovered that Bae

3

was not honoring the agreement, and Plaintiff "[was coerced by Defendants] into. . . pay[ing] for a portion of work that benefitted Defendants but not Plaintiff." (ECF No. 38-4, at ¶¶ 49, 51);

(e) Between October 2015 and no later than February 2017, two of Defendant Bae's interns worked on a part-time basis for Plaintiff on the proof of concept, prototype, and batch manufacturing process project("licensed technology").( ECF No. 38-4, at ¶¶ 52-53);

(f) During his employment with Plaintiff, Defendant Bae co-authored an article related to the licensed technology project.[1] (ECF No. 38-4, at ¶ 55);

(g) Defendant Bae ended his employment with UM "on or about June 2016." (Proposed Complaint, at ¶ 49);

(h) Dr. Bae signed a non-disclosure agreement with Plaintiff in April 2017. (Proposed Complaint, ¶ 49); and

(i) In May 2017, Dr. Yu borrowed a microscope belonging to Plaintiff, but never returned it. (Proposed Complaint, ¶ 76);

(j) After Dr. Bae ceased working at UM, including in or about May 2017, he "misappropriated numerous items of new and expensive equipment" that Plaintiff owned for his benefit and the benefit of one of his interns. (Proposed Complaint, at ¶¶ 77-78);

(k) Defendants disclosed "the confidential information outside of the scope of their work for UM. In fact, Defendants' decisions to make such disclosures were independent of UM." (*Id*., at ¶¶ 94,105, 114); and

---

[1] Plaintiff alleges that this article was published in June 2016, which it asserts was at the time that Defendant Bae ended his employment with UM. However, Defendant Bae's last date of employment with UM appears to be two months later, i.e. on August 12, 2016. (ECF No. 39-1).

4

(l) At some point in late 2017, "upon information and belief, Defendants [exploited] such research and development to advance their own commercial interests." (*Id*., at ¶73).

### B. Counts II, III, and IV: Misrepresentations, Malice, and Gross Negligence

MedSense expanded upon the misrepresentations that underpin counts II (intentional misrepresentation), III (negligent misrepresentation), and IV (constructive fraud) as follows:

On or about March 15, 2010, UM and Plaintiff entered into a License Agreement ("2010 Agreement"), under which UM gave Plaintiff the "exclusive right and license under and to certain licensed inventions and certain patent rights to make, have made, use, sell. . .certain licensed products, services, and processes." (Proposed Complaint, at ¶¶13, 14). Before the 2010 Agreement was signed, "UM provided a personal viewing to [Plaintiff's owners]," and assured them that the technology was "state-of-the-art and ready for commercialization." (*Id.*, at ¶¶84, 98). According to Plaintiff, it owned the patents for inventions related to the licensed technology. In 2013, UM and Plaintiff signed an agreement ("2013 Agreement"), under which Plaintiff would work closely with Drs. Yu and Bae to develop the licensed technology in exchange for granting equity interests to Defendants in an entity to be formed by Plaintiff. The licensed technology was to be further developed under the TEDCO Phase III grant, as well as other grants. In addition, "any rights gained by the Defendants were contributed to Plaintiff in exchange for the equity interests in Plaintiff granted to Defendants," and Defendants promised to provide that work to Plaintiff, as well as keep it confidential (Proposed Complaint, at ¶¶27-34, 39-41, 4785, 99). Plaintiff further alleged that Defendants Bae and Yu falsified the results included in the TEDCO Phase III grant report[2] by misrepresenting that they had successfully engineered "a batch fabrication process to mass produce

---

[2] While not explicitly stated, this report must have been authored after the project ended, i.e., after March 13, 2015. *See* Proposed Complaint, ¶40.

5

400 of the licensed sensors." Relatedly, Defendants misrepresented that no further work was required related to the licensed technology. (*Id.*, at ¶¶40, 41, 66, 67, 84-92, 98-100, 101, 103,108).

Plaintiff claims that all of the aforementioned misrepresentations were made to "fraudulently induce Plaintiff to enter into the 2010 Agreement, the 2013 Agreement, the grant-related agreements so that Plaintiff would continue to fund efforts related to the licensed [technology]." (*Id.*, at ¶90). In addition, before the 2013 Agreement was consummated, Defendants failed to disclose that in 2012 they had already published an article with Plaintiff's trade secrets and confidential information. (*Id.*). Plaintiff relied on these misrepresentations, and expended funds to work with a manufacturer to fabricate these sensors with the goal of selling them. (*Id.*, at ¶¶ 40, 41, 66, 67, 84-92, 98-100, 101, 103,109, 110).

Plaintiff does not allege that either Dr. Bae or Dr. Yu is a signatory to any of the agreements mentioned in the Proposed Complaint.

According to Counts II (intentional misrepresentation) and III (negligent misrepresentation), these misrepresentations and "underlying disclosures of confidential information" were "done maliciously and/or in reckless disregard of the harm that would be caused to Plaintiff's property interest in the licensed technology, and show a thoughtless disregard of the consequences without Defendants making any effort to avoid them." (*Id.*, at ¶¶ 93, 104). Plaintiff further claims that it was never able to produce the licensed technology, which caused it to suffer "present and future losses and lost profits." (*Id.*, at ¶¶ 96, 106).

According to Count IV (constructive fraud), Plaintiff only agreed to enter into the 2013 Agreement, thereby granting Defendants equity interests in the licensed technology, because it credited Defendants' misrepresentations and believed that Defendants would not disclose their trade secrets. Plaintiff asserts generally that Defendants' conduct is egregious "because they were

in a position of great trust and confidence given the relationship of the parties." (*Id.*, at ¶¶ 108, 112). Finally, Defendants breached their duty to "accurately disclose [the status] of the licensed technology" and to not disclose the trade secrets intentionally, "with malice and/or with reckless disregard for Plaintiff, and "show[ed] a thoughtless disregard of the consequences without Defendants making any effort to avoid them." (*Id.*, at ¶¶ 109-113).[3]

### C. Counts VI, VII, and IX: Misappropriation of Trade Secrets and Tortious Interference with Contract

Regarding Counts VI and VII, the language in Proposed Complaint remains largely unchanged. Plaintiff still alleges that Defendants willfully and maliciously misappropriated its confidential patent information and licensed technology; i.e., Defendants published several articles and made disclosures to third parties regarding the same without Plaintiff's knowledge or consent. The articles were published in June 2012, September 2013, April 2014, March 2015, 2015[4], June 20, 2016, June 27, 2016 and August 2019. (*Id.*, at ¶¶ 41-45, 48, 55-58, 60, 62-65, 79). Plaintiff learned about the Defendants' disclosures after February 2017 (*Id.*, at ¶¶ 70-71).

One new allegation is that Dr. Bae's April 2017 non-disclosure agreement with Plaintiff obligated **both** Defendants to keep secret the licensed technology. (*Id.*, at ¶ 125). There are no factual details averred regarding which parts of the licensed technology are trade secrets.

Regarding Count IX, Plaintiff maintains that Defendants Yu and Bae intentionally interfered with the "contractual relationship between Plaintiff and Defendants(sic)" by misrepresenting the true readiness of the licensed technology for mass production, as well as causing the unauthorized publication of Plaintiff's trade secrets. These acts were done to "cause

---

[3] In Count VIII, Plaintiff also alleges that Defendants were unjustly enriched by receiving equity interests in Plaintiff's company. (Proposed Complaint, at ¶¶ 139-142). The language in the Proposed Complaint is identical to that in the Amended Complaint. As set for the below in Section III, the Court analyzes whether allowing amendment to include this count would be futile, prejudicial, or in bad faith.

[4] Plaintiff did not provide more specific dates. (Proposed Complaint, at ¶57).

Defendants UM and USM(sic) to breach the License Agreement," and were committed "in their individual capacities as equity interest holders of Plaintiff for their own personal benefit." (*Id.*, at ¶¶ 146-148).

## II. STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure governs motions to amend pleadings. According to Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." The court should freely grant leave to amend when "justice so requires." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).

The decision to grant a motion for leave to amend a pleading lies within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). A court may deny leave to amend only if: (1) that amendment would prejudice the opposing party; (2) the moving party has acted in bad faith; or (3) an amendment would be futile. *Edell &Assocs., P.C. v. Law Offices of Peter Angelos*, 264 F.3d 424, 446 (4th Cir. 2001). A court may also deny leave to amend a complaint if a plaintiff "has already amended more than once before without curing the deficiencies." *Foman*, *supra*, 371 U.S. at 182.

When determining whether amendment of a complaint would be futile, a court does not examine the merits of the case. *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.,* Case No. RDB 12-2109, 2013 WL 1819944, at *3 (D.Md. Apr. 30, 2013). Rather, a court can construe an amendment as futile "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)(citation omitted). An amended complaint fails to state a claim "if it does not contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed.R.Civ.P.

8(a)(2)." *Kolb v. Acra Control, Ltd., et al.*, 21 F.Supp.3d 515, 522 (D.Md. 2014)(citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009)).

In addition, an amended complaint will be deemed futile if it fails to state "a plausible claim for relief, as threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, does not suffice." *Kolb*, 21 F.Supp.3d at 522 (internal quotation marks and citation omitted). Put another way, Rule 8(a)(2) "demands more than bald accusations or mere speculation," and requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, an amended complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. A court is not required to accept as true allegations that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002).

**III. DISCUSSION**

Plaintiff advances three arguments in support of its motion to file the Second Amended Complaint. First, MedSense maintains that it sufficiently alleges that the Defendants' conduct was grossly negligent, malicious, and outside of the scope of their public employment. Thus, because neither Defendant can claim MTCA statutory immunity they can be held individually liable, and amendment would not be futile. Second, in light of the amendments, it would be just to allow the claims on their merits. Third, Defendants will not suffer any prejudice because only preliminary motions have been filed. (ECF No. 38-1, pp. 6-7).

Defendants counter that the amendment would be futile for two reasons: (1) Plaintiff fails to plausibly allege that Defendants Yu and Bae acted with malice or gross negligence, or that their conduct was outside the scope of their public employment. Thus, they are entitled to immunity

under the MTCA; and (2) the Proposed Complaint "fails to state a claim as a matter of law for all the reasons outlined in Defendant's motion to dismiss and reply brief."[5] Finally, Defendants allege that allowing Plaintiff to amend would prejudice them. (ECF No. 39, pp. 3-9).

### A. Prejudice

Regarding prejudice, an amendment is not prejudicial "if it merely adds an additional theory of recovery to the facts already pled, and is offered before any discovery has occurred." *Glass Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, Case No. ELH 16-3431, 2017 WL 2377105, at *9 (D.Md. May 31, 2017)(quoting *Laber v. Harvey*, 438 F.3d 404, 427). Here, Defendants cannot demonstrate prejudice for two reasons. First, the Amended Complaint generally made them aware of the salient facts underlying the claims, and the proposed amendments are an attempt to tailor those facts to establish malice, gross negligence, and conduct outside of the scope of their public employment. Second, the Court has not yet issued a scheduling order in this case, so formal discovery has not yet commenced. *Laber*, 438 F.3d at 427. Accordingly, Defendants have failed to meet their burden of establishing prejudice. *Glass Produce Grp.,* 2017 WL 2377105, at *9 (citation omitted).

### B. Statutory Immunity

A seminal case in this circuit on the immunity afforded to Maryland state employees pursuant to the MTCA is *Marks v. Dann*, Case No. DKC 13-347, 2013 WL 8292331, (D.Md. July 24, 2013), *aff'd* 600 Fed. Appx. 81 (4th Cir. 2015). A state employee is entitled to broad immunity from suit under the MTCA unless: (1) he acts outside of the scope of his employment; and (2) he acts with malice or gross negligence. *Marks*, 600 Fed. Appx. at 85-86.

---

[5] As is relevant given the posture of this case, those arguments are: (a) all tort claims and the Defense of Trade Secrets Act claim are barred by their respective statutes of limitations; and (b) pursuant to Fed.R.Civ.P.12(b)(6), the misappropriation, unjust enrichment and tortious interference with contract claims fail as a matter of law. (ECF Nos. 29-1, pp. 22-26, 30-34). The Court makes its findings regarding "malice" and failure to state a claim in Section III.B.

In order for the filing of the Proposed Complaint to not be futile, then, it must plausibly establish that Drs. Yu and Bae acted outside of the scope of their public duties with UM, or that they acted maliciously or with gross negligence. *See also Barbre v. Pope*, 402 Md. 157, 935 A.2d 699, 714 (Md. 2007). The court must be able to logically or reasonably infer from the facts averred that the defendants so acted. *Marks*, 2013 WL 8292331, at *13.

    *1. Scope of Employment*

When determining whether an employee's actions are outside of the scope of public employment, relevant considerations include "whether the employee's actions are personal," i.e., advance his self-interest, or whether the actions represent a departure from—or are in furtherance of-- the employer's business. *Marks*, 2013 WL 8292331, at *13.

In an attempt to establish that Defendants are not immune on this basis, Plaintiff's Proposed Complaint makes several allegations in Counts II, III, IV, and IX. (Proposed Complaint, at ¶¶ 43-45, 48-53, 55, 57, 60, 65, 73, 79, 94,105, 114, 147-148). None satisfy the plausibility test.

First, these counts contain the formulaic recitation that the Defendants "disclosed the confidential information outside of the scope of their work for UM." The Court does not find this conclusory statement to be supported by any factual averments. Second, Plaintiff alleges that Dr. Bae and his interns worked part-time for Plaintiff while simultaneously working for UM. Assuming that this is true, Plaintiff fails to set forth facts such that the Court can reasonably infer that Dr. Bae's actions are personal rather than done to concurrently advance the interests of UM. *Marks* makes clear that the conduct must be done due to reasons of "personal ambition" or reasons "unauthorized" by UM, not reasons that may have a dual purpose. 600 Fed. Appx. at 88. Third, crediting that Dr. Bae used his personal email address, and that he "misappropriated lab equipment," those allegations are not clearly written to demonstrate relevance to the

misappropriation of trade secrets and misrepresentations that are the core of the Proposed Complaint. Next, with respect to the allegation that Dr. Yu "intermingled efforts from several funding sources with the confidential efforts of Plaintiff," the Proposed Complaint fails to articulate its relevance such that the Court can reasonably infer that the conduct was done out of self-interest. Moreover, despite Plaintiff's attempts to cast these acts as outside of the scope of the Defendants' employment, examining the Proposed Complaint as a whole, the misrepresentations occurred when both Drs. Bae and Yu were UM employees and relate to their work on the licensed technology project. In addition, all of the articles authored by Defendants Bae and Yu-except for the August 2019 article-- were published while they were UM employees.

Regarding Count IX, Plaintiff alleges that Defendants' misrepresentations about the readiness of the licensed technology were done to "cause Defendants UM and USM (sic) to breach the License Agreement." However, Plaintiff also alleges that Drs. Bae and Yu misappropriated trade secrets and misrepresented the status of the licensed technology "in their individual capacities as equity interest holders of Plaintiff." (Proposed Complaint, at ¶ 147-148). These assertions are at odds with the other factual averments and do not appear logical. UM signed the License Agreement in 2010, 3 years before Drs. Bae and Yu obtained equity interests in Plaintiff by way of the 2013 Agreement.

With respect to the August 2019 article, Plaintiff does not allege that Dr. Yu was not an UM employee when it was published, nor does Plaintiff offer any facts from which the Court can infer that his conduct was due to his personal ambition. In sum, the Court does not find that the allegations, coupled with naked claims of liability based on "information and belief," *see* (Proposed Complaint, at ¶ 73), plausibly establish that Dr. Yu acted outside of the scope of his employment as articulated in Counts II-IV, VI-IX.

Regarding Dr. Bae, at first blush, Plaintiff seems to have asserted facts a few from which the Court can infer that he acted outside of the scope of his employment when he co-authored the 2019 article. First, Dr. Bae ceased employment with UM in August 2016. (ECF No. 39-1). Second, he continued to work directly with Plaintiff on a part-time basis after that time until well into 2017 and was compensated for that work. Third, he signed a non-disclosure agreement in 2017. (Proposed Complaint, at ¶¶ 49, 77). A reasonable inference to be drawn from the signing of this contract is that there was a change in the nature of his relationship with Plaintiff. However, as written, the Proposed Complaint does not clearly articulate how these facts give rise to a reasonable inference that his actions were personal or designed to advance his self-interest.

### 2. *Malice or Gross Negligence-Generally*

In Maryland, a Plaintiff must overcome a "high standard when pleading malice." *Taylor v. Somerset Cty. Comm'rs*, Case No. RDB 16-336, 2016 WL 3906641, at *6 (D.Md. July 19, 2016)(citation omitted). Malice is defined as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Barbre*, 935 A.2d at 714. Thus, malice requires that the public employee must "actually and subjectively intend to do wrong or harm." *Marks v. Dann,* 600 F. App'x at 86.

In addition, "the mere assertion that an act 'was done maliciously, or without just cause, or illegally. . .or for improper motive' is not sufficient." *Manders v. Brown*, 101 Md.App. 191, 216 (1994)(quoting *Elliott v. Kupferman*, 58 Md.App. 510, 526 (1984)). To defeat a claim of entitlement to statutory immunity, "the plaintiff must allege with some clarity and precision those facts which make the act malicious." *Marks*, 2013 WL 8292331, at *10(internal citation and quotation marks omitted). As stated earlier, "threadbare recitals of the elements. . ., supported by

mere conclusory statements, do not suffice" to allege malice. *See Iqbal,* 556 U.S. at 678-79; *Barbe*, 935 A.2d at 714; *Taylor* 2016 WL 3906641, at *5; and *Marks*, 2013 WL 8292331, at *10.

"Gross negligence" is defined as the "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbe*, 935 A.2d at 717(quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)). Put another way "a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.* at 717.

Furthermore, Maryland courts have held that gross negligence "'implies malice and evil intention,' [and] have also required that malice be alleged as part of a claim of gross negligence." *MTB Servs., Inc.* 2013 WL 1819944, at *4 (quoting *Bannon v. B & O. R.R. Co.*, 24 Md. 108, 124(1866), and citing to *Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 956 (Md.App. 1989)(dismissal of gross negligence claims devoid of any acts of malice by defendants)). Moreover, to establish gross negligence, "bald and conclusory allegations will not suffice; specificity is required." *MTB Servs., Inc.* 2013 WL 1819944, at *4(internal citation omitted).

### 3. Malice – The Instant Case

In *Marks v. Dann*, the Fourth Circuit upheld the district court's finding that malice in a commercial context is usually "inferred from acts and circumstantial evidence." 600 Fed. Appx. at 86. The Fourth Circuit also upheld the district judge's finding that:

> Maryland case law makes clear that inferring [MTCA] malice from circumstantial evidence can be especially difficult in the commercial context, where behavior might be consistent with an intent to harm or some other improper motive is often at least equally consistent with permissible self-interest. . . That is not to say that malice can never be inferred circumstantially in a commercial setting. But there must be more to support the inference than the allegation that a plaintiff has suffered economic injury as a result of actions by a

state official that advance the economic interests of his or her state employer, because allegations as consistent with the regular course of commercial dealings as they are with malicious intent do not, on their own 'nudge [] [a claim] across the line from conceivable to plausible.

*Id.* at 86-87 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).

In this case, the Proposed Complaint is devoid of any **facts** from which the Court can reasonably infer that Drs. Yu and Bae acted with malice in connection with Counts II-IX. It is true that the Proposed Complaint recites phrases that track the elements of each claim. *See, e.g.,* (Proposed Complaint, at ¶¶ 93, 94, 104, 105, 110-113, 126-127, 131, 136-137). However, where are the **factual allegations** that evidence their evil motive, knowing and deliberate wrongdoing, or ill will? Even though Plaintiff states that "upon information and belief, Defendants [exploited] such research and development to advance their own commercial interests," (Proposed Complaint, at ¶73), the gravamen of the allegations relate to the Defendants' conduct while employed by UM. As it is currently written, then, Defendants' behavior is equally consistent with an intent to harm, as it is with regular business dealings and permissible self-interest. For instance, crediting Plaintiff's allegations, publication of articles has a self-interested component for Defendants Bae and Yu and UM (their names are associated with developing a technology). Where behavior is consistent with "regular course of commercial dealings as [with] malicious intent," that does not "nudge [] [a claim] across the finish line from conceivable to plausible." *Marks*, 600 Fed. Appx. at 86-87(citation omitted).

In addition, as stated earlier, the misrepresentation allegations in Count IX, Drs. Bae and Yu were not equity holders before the 2010 License Agreement was entered into by an UM official. A court is not required to accept as true allegations that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002).

Moreover, regarding the trade secrets allegations, the Proposed Complaint uses conclusory statements, yet fails to include well-pled factual allegations from which the Court can infer that Drs. Bae and Yu –not UM--had a duty to maintain the secrecy of the information, and that they violated the terms of a Licensing Agreement between UM and Plaintiff. Plaintiff's general reference to a 2017 non-disclosure agreement executed by Dr. Bae, without more factual averment, does not persuade this Court otherwise.

Akin to malice, conclusory allegations of gross negligence are not enough. *Barbre v. Pope*, 402 Md. 157, 935 A.2d 699, 714 (Md. 2007). Here, Plaintiff's threadbare recitals of the elements and lack of factual averment related to intent are insufficient. *Barbe*, 935 A.2d at 717.

Furthermore, because MedSense "has already amended more than once before without curing the deficiencies," *see Foman*, 371 U.S. at 182, the Court declines to allow further amendment.

In sum, the Court does not find that the allegations plausibly establish that Dr. Yu acted with malice or gross negligence (Counts II-IV, VI-IX).[6] In addition, Plaintiff does not offer facts giving rise to a plausible inference that Dr. Bae was acting with malice or gross negligence (Counts II-IV, VI-IX).[7]

## IV. CONCLUSION

In sum, the Proposed Complaint contains conclusory labels and bald assertions, and lacks facts giving rise to a plausible inference that Dr. Yu was acting outside of the scope of his employment, or acted with malice towards MedSense. Dr. Yu is entitled to statutory immunity

---

[6] Because all other counts against Dr. Yu will be dismissed, Count V does not survive, as the Declaratory Judgment Act does not provide a basis for a claim independent of other causes of action. *See* 28 U.S.C. §2201; *Johnson v. Prince George's Cty. Bd. of Elections*, Case No. DKC 17-2867, 2018 WL 1069434, at *5 (D.Md. Feb 27, 2018). Count VIII, unjust enrichment, does not survive this action because Dr. Yu is entitled to statutory immunity.

[7] Count V does not survive because a federal cause of action related only to the 2019 article (Count VI) does not survive. Count VIII, unjust enrichment, does not survive this action because Dr. Bae is entitled to statutory immunity.

under the MTCA; thus, amendment related to him would be futile. Accordingly, ECF No. 38, as it relates to Dr. Yu, is **DENIED**.

With respect to Dr. Bae, ultimately MedSense has not set forth facts that give rise to a plausible inference that he acted outside of the scope of employment as related to the publication of the August 2019 article. In addition, Plaintiff fails to plausibly allege malice or gross negligence, and the Court declines to allow further amendment.  Accordingly, ECF No. 38, as it relates to Dr. Bae, is also **DENIED**.


Dated:  July 6, 2020                                                                      /s/
                     The Honorable Gina L. Simms
                     United States Magistrate Judge